# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ISABEL LITOVICH, MICHAEL V.             :
COTTRELL, FRANK HIRSCH,                  :
HOLDCRAFT MARITAL TRUST, and            :
UNITED FOOD AND COMMERCIAL             :
WORKERS UNION AND PARTICIPATING  :
FOOD INDUSTRY EMPLOYERS TRI-          :
STATE PENSION FUND, on Behalf of         :
Themselves and All Others Similarly Situated,  :
                                                        :
                Plaintiffs,         :
                                                        :
      v.                                        :
                                                        :
BANK OF AMERICA CORPORATION;        :
MERRILL LYNCH, PIERCE, FENNER &     :
SMITH, INC.; BofA SECURITIES, INC.;       :    Civil Case No. 1:20-cv-03154 (VEC)
BARCLAYS CAPITAL INC.; CITIGROUP   :
INC.; CITIGROUP GLOBAL MARKETS      :
INC.; CREDIT SUISSE SECURITIES (USA)  :
LLC; DEUTSCHE BANK SECURITIES        :
INC.; THE GOLDMAN SACHS GROUP,       :
INC.; GOLDMAN, SACHS & CO., LLC;        :
JPMORGAN CHASE & CO.; J.P. MORGAN  :
SECURITIES LLC; MORGAN STANLEY;     :
MORGAN STANLEY & CO., LLC;              :
MORGAN STANLEY SMITH BARNEY        :
LLC; NATWEST MARKETS SECURITIES    :
INC.; WELLS FARGO & CO.; WELLS          :
FARGO SECURITIES LLC; and WELLS       :
FARGO CLEARING SERVICES, LLC,          :
                                                        :
                Defendants.      :
                                                        :
                                                        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION
## FOR AN INDICATIVE RULING UNDER FED. R. CIV. P. 62.1

April 27, 2022

# TABLE OF CONTENTS

*Page*

PRELIMINARY STATEMENT ...........................................................................................1

BACKGROUND ..............................................................................................................4

ARGUMENT ...................................................................................................................6

I.    This Court Should Defer Ruling on Plaintiffs' Requests in View of the Ongoing
      Appeal That Raises the Same Conflict Issue and That Will Subject Judge
      Liman's Dismissal of the Case to *De Novo* Review ...........................................6

      A.    Plaintiffs Should Not Be Permitted to Use Rule 62.1 to Present the Same
            Issue Simultaneously to Both the Second Circuit and This Court.........................7

      B.    The Second Circuit's *De Novo* Review of Judge Liman's Dismissal of the
            Case Will Render His Failure to Recuse Himself at Most Harmless Error.............9

II.   In the Alternative, This Court Should Deny Plaintiffs' Request for an Indicative
      Ruling That Judge Liman's Potential Conflict Requires Vacatur of the Judgment..........11

      A.    Judge Liman's Recusal Was Not Required Under Section 455 ...........................12

      B.    Even If Judge Liman Violated Section 455, Vacatur of the Judgment Is
            Not Warranted Under Rule 60(b)(6).....................................................................14

III.  This Court Also Should Defer Consideration of Plaintiffs' Improper Request for
      an Indicative Ruling That the Court Would Grant Leave to Amend the
      Complaint...........................................................................................................18

      A.    Plaintiffs' Request for a Second Indicative Ruling Is Premature and
            Procedurally Improper ..........................................................................................19

      B.    Plaintiffs Had Ample Opportunities to Amend Their Complaint.........................19

      C.    Plaintiffs' Proposed Amendments Are Futile .......................................................20

CONCLUSION...............................................................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams* v. *Kijakazi*,
 2022 WL 987337 (E.D. Ky. Mar. 31, 2022) .............................................................8

*Amarin Pharms. Ireland Ltd.* v. *Food & Drug Admin.*,
 139 F. Supp. 3d 437 (D.D.C. 2015) .........................................................................8

*Brock* v. *Zuckerberg*,
 2022 WL 1231044 (2d Cir. Apr. 27, 2022) .........................................10, 13, 15

*Camacho* v. *Autoridad de Telefonos de P.R.*,
 868 F.2d 482 (1st Cir. 1989)..................................................................10 18

*Cap. Imaging Assocs., P.C.* v. *Mohawk Valley Med. Assocs., Inc.*,
 996 F.2d 537 (2d Cir. 1993) ...................................................................22

*Chase Manhattan Bank* v. *Affiliated FM Ins. Co.*,
 343 F.3d 120 (2d Cir. 2003)...........................................................13, 14, 16

*Chesher* v. *3M Co.*,
 2022 WL 88328 (D.S.C. Jan. 6, 2022) ....................................................16

*Elgalad* v. *N.Y. City Dep't of Educ.*,
 2019 WL 4805669 (S.D.N.Y. Sept. 30, 2019)......................................16

*Faulkner* v. *Nat'l Geographic Enters. Inc.*,
 409 F.3d 26 (2d Cir. 2005)....................................................10, 15, 18

*Kendall* v. *Daily News Publ'g Co.*,
 716 F.3d 82 (3d Cir. 2013).....................................................................10

*LFoundry Rousset, SAS* v. *Atmel Corp.*,
 690 F. App'x 748 (2d Cir. 2017) ............................................................8

*LifeWatch Servs. Inc.* v. *Highmark Inc.*,
 902 F.2d 323 (3d Cir. 2018)..................................................................23

*Liljeberg* v. *Health Servs. Acquisition Corp.*,
 486 U.S. 847 (1988)........................................................................13, 14

*Marcus* v. *Smith*,
 755 F. App'x 47 (2d Cir. 2018) ......................................................... *passim*

*Maricultura del Norte, S. de R.L. de C.V.* v. *WorldBusiness Cap., Inc.*,
 2019 WL 2117645 (S.D.N.Y. Apr. 26, 2019)...........................................................................8

*Medgraph, Inc.* v. *Medtronic, Inc.*,
 310 F.R.D. 208 (W.D.N.Y. 2015)............................................................................................8

*Murry* v. *Ocwen Loan Servicing, LLC*,
 2022 WL 194481 (D. Colo. Jan. 21, 2022)...........................................................................15

*Nat'l Res. Def. Council, Inc.* v. *Sw. Marine Inc.*,
 242 F.3d 1163 (9th Cir. 2001) ................................................................................................7

*N.Y. State Nat'l Org. for Women* v. *Terry*,
 886 F.2d 1339 (2d Cir. 1989)............................................................................................7, 9

*Olean Wholesale Grocery Cooperative, Inc.* v. *Bumble Bee Foods LLC*,
 No. 19-56514 (Apr. 8, 2022), ECF No. 185 .........................................................................14

*Parker* v. *Connors Steel Co.*,
 855 F.2d 1510 (11th Cir. 1988) ............................................................................................18

*Patterson* v. *Mobil Oil Corp.*,
 335 F.3d 476 (5th Cir. 2003) ..........................................................................................10, 18

*Rabang* v. *Kelly*,
 2018 WL 1737944 (W.D. Wash. Apr. 11, 2018)....................................................................8

*Ret. Bd. of Policemen's Annuity & Ben. Fund of Chicago* v. *Bank of N.Y. Mellon*,
 297 F.R.D. 218 (S.D.N.Y. 2013) ................................................................................... *passim*

*Roberts* v. *Wal-Mart Store Stores*,
 2022 WL 141677 (W.D. La. Jan. 14, 2022) .........................................................................16

*United States* v. *All Assets Held in Acct. No. 80020796, in the Name of Doraville*
 *Props. Corp.*,
 2017 WL 6886092 (D.D.C. Nov. 15, 2017) ...........................................................................8

*United States* v. *Amico*,
 486 F.3d 764 (2d Cir. 2007)..................................................................................................15

*Yamashita* v. *Scholastic Inc.*,
 936 F.3d 98 (2d Cir. 2019)......................................................................................................9

## Statutes

28 U.S.C. § 455.................................................................................................................. *passim*

**Rules**

Fed. R. Civ. P. 15(a)(2) ................................................................2, 18

Fed. R. Civ. P. 60(b) ................................................................ *passim*

Fed. R. Civ. P. 62.1 ................................................................ *passim*

Defendants respectfully submit this joint brief in opposition to Plaintiffs' Motion for an Indicative Ruling Under Rule 62.1 (ECF No. 161).  This Court should defer considering Plaintiffs' requests for indicative rulings until their ongoing appeal is resolved.  Alternatively, if the Court is inclined to consider the merits of Plaintiffs' requests, the Court should deny them.

## PRELIMINARY STATEMENT

Plaintiffs in this putative class action alleged a farfetched 20-year antitrust conspiracy among nineteen Defendants to boycott all-to-all electronic trading platforms, which supposedly inflated the prices of "odd lots" of corporate bonds.  After two rounds of amendments to the complaint and full briefing and oral argument on Defendants' motion to dismiss, Judge Liman dismissed the complaint for failure to state a claim in a well-reasoned, 62-page Opinion and Order, dated October 25, 2021 (ECF No. 147).  Plaintiffs have appealed that ruling to the Second Circuit, and briefing on that appeal is underway.

Less than two weeks before Plaintiffs' opening appellate brief was due to be filed in the Second Circuit, the Clerk of Court informed the parties by letter dated February 25, 2022 that a "potential conflict" had been "brought to [Judge Liman's] attention" arising from his wife's ownership of stock in Bank of America Corporation, one of the Defendants in this case, that "neither affected nor impacted [Judge Liman's] decisions."  (ECF No. 155.)  The Clerk later clarified that "the stock holding referenced in [her] February 25 letter was fully divested [by Judge Liman's wife] in July 2021" (ECF No. 159), approximately two months before the September 9 oral argument on Defendants' motion to dismiss (ECF No. 145) and three months before Judge Liman issued his October 25 decision (ECF No. 147).

Based on that "potential conflict," Plaintiffs notified this Court of their intention to file a motion in the Second Circuit to hold the briefing on their appeal in abeyance so that they could "file a motion to vacate the judgment" with this Court.  (ECF No. 156.)  The Second Circuit,

however, *denied* Plaintiffs' request to hold their appeal in abeyance. *Litovich* v. *Bank of Am. Corp.*, No. 21-2905 (2d Cir. Mar. 15, 2022), ECF No. 112. Plaintiffs' opening appellate brief, which was filed on March 8, devotes an entire section to the argument that the judgment in this case should be vacated based on Judge Liman's potential conflict of interest. (*Id.*, ECF No. 100, at 60-63.) As a result, the conflict issue that Plaintiffs now seek to raise with this Court is squarely before the Second Circuit in Plaintiffs' pending appeal.

Despite the Second Circuit's refusal to stay their appeal, Plaintiffs still seek an "indicative ruling" from this Court under Rule 62.1 of the Federal Rules of Civil Procedure that, "if the Court of Appeals remands this case, this Court would grant a Rule 60(b) motion by Plaintiffs to vacate Judge Liman's dismissal of this case and, after doing so, would also grant Plaintiffs leave to amend their complaint pursuant to Federal Rule of Civil Procedure 15(a)(2)." (Pls.' Mem. 1.) This Court should defer considering both requests for indicative rulings until Plaintiffs' appeal is resolved or, if the Court is inclined to consider the merits of the requests, deny them outright.

*First*, the Second Circuit in the ongoing appeal will decide the conflict issue raised by the instant motion and also will review *de novo* Judge Liman's decision dismissing the complaint. As a result, this Court should defer considering Plaintiffs' requests pursuant to Rule 62.1(a)(1) until after the appeal is decided. Courts regularly refuse "to issue an indicative ruling reconsidering the same question being reviewed by the court of appeals" because "an indicative ruling on the very issue on appeal only interrupts the appellate process." *Ret. Bd. of Policemen's Annuity & Ben. Fund of Chi.* v. *Bank of N.Y. Mellon*, 297 F.R.D. 218, 221 (S.D.N.Y. 2013).[1] Plaintiffs' attempt to "place[] the same issue in front of two courts at the same time," *id.* at 223, is particularly inappropriate here because Judge Liman's dismissal of the complaint under Rule 12(b)(6) is

---

[1] Unless otherwise indicated, all internal citations, alterations and quotation marks are omitted.

subject to *de novo* review by the Second Circuit.  The Second Circuit's plenary review of the complaint's allegations and the legal issues raised by Plaintiffs, and its indisputably independent and impartial decision, will moot any potential conflict issue and will render Judge Liman's failure to recuse himself at most harmless error.

*Second*, even if the Court were to consider the merits of Plaintiffs' request to vacate the judgment, that request should be denied because Plaintiffs fail to show that Judge Liman had a disqualifying conflict that required recusal under 28 U.S.C. § 455 at the time he issued his decision. To the contrary, Judge Liman's wife sold her Bank of America stock three months before the decision was issued.  Plaintiffs also fail to demonstrate that vacatur of the judgment is warranted under Rule 60(b)(6), particularly because the Second Circuit's *de novo* review of Judge Liman's decision will render any possible violation of Section 455 harmless.  In arguing that vacatur is required, Plaintiffs essentially take the position that the judgment automatically should be vacated under Rule 60(b)(6) whenever Section 455 is violated.  (*See* Pls.' Mem. 17.)  As decisions of the Supreme Court and Second Circuit make clear, that is not the law.

*Third*, this Court likewise should defer consideration of Plaintiffs' separate request for a further indicative ruling that, in the event that the judgment is vacated, this Court also would grant Plaintiffs leave to amend their complaint.  There is no need at this juncture for this Court to decide what next steps it would take if the judgment is vacated or in particular whether further amendments to the pleadings would be proper.  There is no basis under Rule 62.1(a) for a district court to outline the successive steps it *might* take if the court of appeals were to remand the action. In any event, Plaintiffs' request for leave to amend should be rejected out of hand because (i) the sufficiency of Plaintiffs' allegations is the subject of the ongoing appeal, (ii) Plaintiffs already have

amended their complaint twice and did *not* request leave to amend their complaint a third time in opposing Defendants' last motion to dismiss, and (iii) the proposed amendments are futile.

## BACKGROUND

Plaintiffs filed this action on April 21, 2020, and the case was assigned to Judge Liman two days later.  Plaintiffs' initial complaint attempted to plead two impossibly broad conspiracies that supposedly inflated the prices of all trades of "odd lots" of U.S. corporate bonds (*i.e.*, trades below $1 million in par value) for more than a decade.  (ECF No. 1.)  Plaintiffs first alleged that Defendants conspired to fix prices for tens of millions of odd-lot trades in tens of thousands of different corporate bonds for more than 14 years.  (*Id.* ¶¶ 78-127, 237-244.)  Plaintiffs further alleged that Defendants participated in a 20-year group boycott of electronic trading platforms in an effort to deny retail investors access to electronic trading of odd lots of corporate bonds.  (*Id.* ¶¶ 128-192, 245-254.)

On June 15, 2020, Plaintiffs filed an unopposed motion for leave to amend their complaint to add additional named plaintiffs, as well as a motion for appointment of interim class counsel. (ECF No. 94.)  On July 10, 2020, Judge Liman held an initial pretrial conference to address these motions and other case management issues.  Judge Liman began the conference by raising with the parties a potential conflict of interest arising from his prior work in private practice representing several of the banks named as Defendants in this case.  Neither side raised an objection on that basis to Judge Liman's presiding over this case.  Following the conference, Judge Liman granted Plaintiffs' motions for leave to amend and for appointment of interim class counsel (ECF No. 108) and entered an initial case management plan and scheduling order that permitted Plaintiffs to amend their complaint a second time after receiving Defendants' motion to dismiss (ECF No. 109).

On September 10, 2020, Defendants moved to dismiss the amended complaint on multiple grounds.  Rather than oppose that motion, Plaintiffs elected to amend their complaint a second

time and filed the operative complaint, their third, on October 29, 2020 (ECF No. 128). Defendants again moved to dismiss. (ECF No. 130.) In opposing that motion, Plaintiffs abandoned their price-fixing claim, thus limiting the case to the claim that Defendants conspired over two decades to boycott certain trading platforms. (ECF No. 133 at 3.) Significantly, although Defendants requested that the complaint be dismissed with prejudice, Plaintiffs did not request leave to amend their complaint again either in their opposition to Defendants' second motion to dismiss or at oral argument on the motion.

After hearing oral argument on September 9, 2021, Judge Liman issued a 62-page Opinion and Order on October 25, 2021 dismissing the complaint in its entirety for failure to state a claim on four independent grounds. (ECF No. 147.) Judge Liman held that (i) the complaint fails to allege a plausible group boycott conspiracy, (ii) the boycott allegations against Defendants rest on impermissible group pleading, (iii) the boycott claim is barred by the four-year statute of limitations, and (iv) Plaintiffs fail to plead antitrust standing. Judge Liman explained his decision to dismiss the complaint with prejudice and without further amendments as follows:

> Because the Court concludes that any amendment would be futile and also because the statute of limitations on Plaintiffs' claims has run and Plaintiffs have not proffered a reason for tolling the statute of limitations, and also because *Plaintiffs have not requested leave to amend the Complaint if the motion to dismiss is granted*, the Complaint is dismissed with prejudice.

(*Id.* at 62 (emphasis added).) Judge Liman emphasized that "Plaintiffs have already amended their complaint once in response to Defendants' first motion to dismiss, . . . which raised virtually identical arguments to those considered here." (*Id*. at 62 n.4.)

Plaintiffs filed a notice of appeal on November 23, 2021. (ECF No. 150.) The Clerk of Court thereafter informed the parties on February 25, 2022 of Judge Liman's potential conflict. The Clerk's letter states:

> Judge Liman informed me that it has been brought to his attention that while he presided over the case his wife owned stock in Bank of America Corporation. His wife's stock ownership is imputed to Judge Liman. That ownership of stock neither affected nor impacted his decisions in this case. However, that stock ownership would have required recusal under the Code of Conduct for United States Judges, and thus, Judge Liman directed that I notify the parties of the potential conflict.

(ECF No. 155 at 2.) Plaintiffs requested that "the matter be re-assigned to a new judge so that Plaintiffs may file a motion to vacate the judgment," and they informed the Court that "Plaintiffs will also be filing a motion in the Second Circuit to hold the [appellate] briefing in abeyance." (ECF No. 156.)

While Plaintiffs' motion to hold the appeal in abeyance was pending, the Clerk of Court wrote the parties to provide "additional information that may be of relevance to this matter." (ECF No. 159.) The Clerk advised the parties that "the stock holding referenced in my February 25 letter was fully divested in July 2021, before the final Opinion and Order . . . terminating this case was issued in October 2021." (*Id.*)

The next day, the Second Circuit denied Plaintiffs' "motion to hold the appeal in abeyance pending the district court's resolution of their motion to vacate." *Litovich* v. *Bank of Am. Corp.*, No. 21-2905 (2d Cir. Mar. 15, 2022), ECF No. 112. Plaintiffs filed their opening appellate brief on March 8, 2022. Section III of Plaintiffs' appellate brief argues that the judgment should be vacated based on Judge Liman's potential conflict of interest. *(Id.*, ECF No. 100, at 60-63.) Defendants' answering appellate brief is due on June 7, 2022.

## ARGUMENT

**I.     This Court Should Defer Ruling on Plaintiffs' Requests in View of the Ongoing Appeal That Raises the Same Conflict Issue and That Will Subject Judge Liman's Dismissal of the Case to *De Novo* Review.**

Under Rule 62.1, where a party makes a motion "for relief that the court lacks authority to grant because of an appeal that has been docketed and is pending, the court may: (1) defer

considering the motion; (2) deny the motion; or (3) state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue."  Fed. R. Civ. P. 62.1.  This Court should defer considering Plaintiffs' requests for indicative rulings for two reasons.  *First*, Plaintiffs already have presented their arguments in support of vacating the judgment to the Second Circuit.  This Court should decline to rule on the same issue that the Second Circuit already is considering.  *Second*, Judge Liman's decision dismissing the case is subject to *de novo* review by the Second Circuit in the ongoing appeal.  The Second Circuit's plenary review of that decision will moot any appearance of partiality and will render Judge Liman's failure to recuse himself at most harmless error.

### A.   Plaintiffs Should Not Be Permitted to Use Rule 62.1 to Present the Same Issue Simultaneously to Both the Second Circuit and This Court.

This Court should decline to issue an indicative ruling under Rule 62.1 on a question that the parties are simultaneously briefing in the Second Circuit.  As Plaintiffs concede (Pls.' Mem. 1), the filing of a notice of appeal "terminates the district court's consideration and control over those aspects of the case that are on appeal."  *N.Y. State Nat'l Org. for Women* v. *Terry*, 886 F.2d 1339, 1349 (2d Cir. 1989).  The purpose of this rule "is to promote judicial economy and avoid the confusion that would ensue from having the same issues before two courts simultaneously."  *Nat'l Res. Def. Council, Inc.* v. *Sw. Marine Inc.*, 242 F.3d 1163, 1166 (9th Cir. 2001).  Rule 62.1 does not override this fundamental principle, but rather provides a mechanism that "allow[s] for the timely resolution of motions which may further the appeal or obviate its necessity."  *Ret. Bd. of Policemen's Annuity & Ben. Fund*, 297 F.R.D. at 221.

District courts thus should defer consideration of a Rule 62.1(a) request that invites them to issue an indicative ruling on the "same question being reviewed by the court of appeals" because "ruling on the very issue on appeal only interrupts the appellate process."  *Id.*; *see also LFoundry*

*Rousset, SAS* v. *Atmel Corp.*, 690 F. App'x 748, 750 (2d Cir. 2017) (affirming denial of motion under Rule 62.1 where substance of motion was briefed on appeal and considered by appellate court).  Recognizing this rule, courts across the country have deferred considering requests for indicative rulings under Rule 62.1(a) that raise issues already on appeal.  *See*, *e.g.*, *Adams* v. *Kijakazi*, 2022 WL 987337, at *2-3 (E.D. Ky. Mar. 31, 2022) (deferring consideration of motion under Rule 62.1 where "pending appeal raises the very same issue on which [the] motion is premised," thus placing "the same issue in front of two courts at the same time"); *Maricultura del Norte, S. de R.L. de C.V.* v. *WorldBusiness Cap., Inc.*, 2019 WL 2117645, at *5 (S.D.N.Y. Apr. 26, 2019) (Rule 62.1 motion that "may be mooted in short order by a decision from the Court of Appeals" is a "quintessential example of pointlessly duplicative proceedings that would serve only to get the district and appellate courts in each other's hair"); *Rabang* v. *Kelly*, 2018 WL 1737944, at *2 (W.D. Wash. Apr. 11, 2018) ("[I]t would be imprudent for the Court to issue an indicative ruling reconsidering the same question being reviewed by the court of appeals."); *United States* v. *All Assets Held in Acct. No. 80020796, in the Name of Doraville Props. Corp.*, 2017 WL 6886092, at *2 (D.D.C. Nov. 15, 2017) (where "pending appeal has raised the very same arguments on which his motion to vacate is premised," the "best course" is to "defer considering [the] motion"); *Medgraph, Inc.* v. *Medtronic, Inc.*, 310 F.R.D. 208, 210 (W.D.N.Y. 2015) (where Rule 62.1 motion does not involve issues "of which the appellate court would presumably be unaware," the "Court of Appeals does not need . . . [the District] Court's advice or opinion"); *Amarin Pharms. Ireland Ltd.* v. *Food & Drug Admin.*, 139 F. Supp. 3d 437, 439, 447-48 (D.D.C. 2015) (deferring consideration of motion under Rule 62.1(a) on issue that "implicate[d] appellate jurisdiction and ha[d] already been briefed in the Court of Appeals").

These cases recognize that it is "a waste of judicial resources for two courts to be considering the same issues in the same case at the same time." *Terry*, 886 F.2d at 1349.  Plaintiffs here already devoted an entire section of their opening appellate brief to the argument that the judgment should be vacated under 28 U.S.C. § 455.  *Litovich* v. *Bank of Am. Corp.*, No. 21-2905 (2d Cir. Mar. 15, 2022), ECF No. 100, at 60-63.  Given that the Second Circuit is considering the same issue that is the subject of Plaintiffs' request for an indicative ruling, this Court should defer considering that request in deference to the appellate court, which "will more finally resolve [the] issue as opposed to proceeding with a district court decision subject to [another] appeal." *Ret. Bd. of Policemen's Annuity & Ben. Fund*, 297 F.R.D. at 222.  Plaintiffs do not address this issue, or this line of authority, in their motion.

### B.   The Second Circuit's *De Novo* Review of Judge Liman's Dismissal of the Case Will Render His Failure to Recuse Himself at Most Harmless Error.

An indicative ruling under Rule 62.1 is particularly inappropriate here because Judge Liman's decision dismissing the complaint under Rule 12(b)(6) will be reviewed *de novo* by the Second Circuit in the ongoing appeal.  *See Yamashita* v. *Scholastic Inc.*, 936 F.3d 98, 103 (2d Cir. 2019) ("Because the court dismissed the Complaint under Federal Rule of Civil Procedure 12(b)(6), our review is de novo.").  The Second Circuit will conduct its own independent evaluation of the sufficiency of the complaint and decide whether Judge Liman's dismissal of the case was correct as a matter of law.  This *de novo* review of the complaint's allegations and the legal issues raised by Plaintiffs will moot any appearance of partiality arising from Judge Liman's potential conflict of interest and will render any failure to recuse harmless.

Indeed, numerous courts, including the Second Circuit, have recognized that, where an appellate court exercises plenary review and independently concludes that a district court's decision was correct as a matter of law, a district judge's failure to recuse himself or herself is "at

most harmless error." *Faulkner* v. *Nat'l Geographic Enters. Inc.*, 409 F.3d 26, 42 n.10 (2d Cir. 2005) ("Given our disposition of the Faulkner appellants' claims, Judge Kaplan's denial of the recusal motion was at most harmless error as to them."); *see also*, *e.g.*, *Brock* v. *Zuckerberg*, 2022 WL 1231044, at *4 (2d Cir. Apr. 27, 2022) (denying motion to vacate "because the risk of injustice to the parties is exceedingly low" where appellate court "review[s] the question whether plaintiff has alleged a legally sufficient claim anew, without any deference" to district judge's assessment); *Marcus* v. *Smith*, 755 F. App'x 47, 52 (2d Cir. 2018) ("[O]ur de novo review of the viability of the Second Amended Complaint alleviates any risk that the public's confidence in the judicial process will be undermined by the alleged conflict."); *Kendall* v. *Daily News Publ'g Co.*, 716 F.3d 82, 97-98 (3d Cir. 2013) ("Plenary review allows us to find harmlessness because any bias which may have infected the district court's decision is fully remedied by our consideration of the motions."); *Patterson* v. *Mobil Oil Corp.*, 335 F.3d 476, 485-86 (5th Cir. 2003) ("Because we review a summary judgment ruling de novo, using the same standards as the district court, the parties are guaranteed a fair, impartial review of the merits of the ruling."); *Camacho* v. *Autoridad de Telefonos de P.R.*, 868 F.2d 482, 490 (1st Cir. 1989) ("Since we have independently confirmed the correctness of the lower court's decision," the "judge's refusal to recuse himself was, at worst, harmless error" and the "matter of disqualification is moot").

Plaintiffs do not address this well-settled line of authority in their motion, which applies with full force here. Judge Liman "performed no factfinding and exercised no discretion." *Camacho*, 868 F.2d at 490. "He determined as a matter of law that plaintiffs' complaint was insufficient. A court of appeals reviews such determinations de novo. Since [the Second Circuit will] independently confirm[] the correctness of the lower court's decision, the judge's [failure] to recuse himself [will become], at worst, harmless error [and] the matter of disqualification [will

become] moot." *Id*.  Under these circumstances, there is no need to interrupt ongoing appellate proceedings, which the Second Circuit already has declined to hold in abeyance, to allow for an "indicative ruling" by this Court.  As a matter of judicial efficiency, this Court should defer considering Plaintiffs' request for such a ruling until after the Second Circuit decides the appeal.

## II.  In the Alternative, This Court Should Deny Plaintiffs' Request for an Indicative Ruling That Judge Liman's Potential Conflict Requires Vacatur of the Judgment.

To the extent this Court is inclined to consider the merits of Plaintiffs' request for an indicative ruling on whether to vacate the judgment, that request should be denied because Judge Liman's failure to recuse himself does not require vacatur of the judgment under Rule 60(b)(6). Plaintiffs do not dispute that the stockholding that gave rise to Judge Liman's "potential conflict" was "fully divested in July 2021, before the final Opinion and Order terminating this case was issued in October 2021."  (ECF No. 159.)  Plaintiffs also readily acknowledge that "it is unlikely that much substantive work on writing the opinion (if any) had occurred by July 2021" when the stockholding was divested (Pls.' Mem. 9), thereby effectively conceding that the stockholding had no impact on Judge Liman's consideration of Defendants' motion to dismiss.  As a result of the ongoing appeal, the Second Circuit will undertake its own *de novo* review of the sufficiency of the complaint's allegations on roughly the same schedule as the instant motion, obviating any potential risk that Judge Liman's decision was tainted by his wife's prior stockholding.

Plaintiffs nevertheless ask this Court to find that Judge Liman violated the anti-conflict provisions of 28 U.S.C. § 455(a) and (b)(4), arguing that "a reasonable person . . . would expect that he knew of his wife's disqualifying holdings."  (*Id*. at 5-6.)  Plaintiffs further argue that Judge Liman's purported violation of Section 455 requires that the judgment be vacated under Rule 60(b)(6).  (*See id*. at 10-12.)  Neither of these arguments has merit.

-11-

### A.     Judge Liman's Recusal Was Not Required Under Section 455.

Plaintiffs' motion fails to demonstrate a violation of Section 455.  To start, Plaintiffs posit that recusal was mandatory under Section 455(b)(4) if Judge Liman actually knew that his wife owned Bank of America stock at any point while presiding over the case.  (*See id.* at 4-6, 17.)  But Plaintiffs do not seriously contend that Judge Liman had such knowledge until shortly before the Clerk of Court's disclosure of the potential conflict to the parties in February, and nothing in the record suggests a basis to conclude that Judge Liman knew of the stockholding before dismissing the case.  To the contrary, the *Wall Street Journal* reported that it inquired into investments held by Judge Liman's wife in early 2022.[2]  Shortly thereafter, the Clerk of Court notified the parties by letter dated February 25, 2022 that "it has been brought to [Judge Liman's] attention that while he presided over the case his wife owned stock in Bank of America Corporation."  (ECF No. 155.)  About two weeks later, the Clerk clarified that "the stock holding . . . was fully divested in July 2021" (ECF No. 159), approximately two months before Judge Liman heard oral argument on Defendants' motion to dismiss in September 2021 and three months before he issued his decision granting that motion in October 2021.

The only logical inference from this sequence of events is that Judge Liman first became aware of his wife's earlier stockholding in February 2022 when the *Wall Street Journal* brought it to his attention.  Indeed, Judge Liman's request at the first conference that the parties raise any conflict-related concerns arising from his prior representation of certain of the Defendants is inconsistent with the notion that he knew of any other disqualification issue and failed to disclose it.  Because there is no basis to conclude that Judge Liman knew of his wife's earlier stockholding

---

[2] James V. Grimaldi, et al., *Fallout From Judges' Financial Conflicts Spreads to Appeals Courts*, WALL STREET J. (Mar. 1, 2022), https://www.wsj.com/articles/fallout-from-judges-financial-conflicts-spreads-to-appeals-courts-11646155384 (explaining that "Judge Liman asked a clerk to file notices" about the potential conflict "after an inquiry last month from the *Journal*").

before Plaintiffs' appeal divested him of jurisdiction, Judge Liman did not violate Section 455(b)(4).  *See Brock*, 2022 WL 1231044, at *4 (2d Cir. Apr. 27, 2022) (where district judge "did not know of his wife's Facebook stock ownership until after he issued a judgment in this case," he "would not have been required to recuse himself under section 455(b)(4)").

Nor was recusal required under Section 455(a).  Plaintiffs argue that, even if Judge Liman was unaware of his wife's stockholdings while presiding over the case, he violated Section 455(a) because his "impartiality might reasonably be questioned."  (Pls.' Mem. 4.)  In the Second Circuit, however, Section 455(a) is violated only if (i) "a reasonable person, knowing all the facts, would conclude that the judge had a disqualifying interest in a party under Section 455(b)(4)," and (ii) "such a person would also conclude that the judge *knew of that interest and yet heard the case*." *Chase Manhattan Bank* v. *Affiliated FM Ins. Co.*, 343 F.3d 120, 128 (2d Cir. 2003) (emphasis added); *accord Liljeberg* v. *Health Servs. Acquisition Corp.*, 486 U.S. 847, 860-61 (1988) (test is whether a reasonable person, "knowing all the circumstances, would expect that the judge would have actual knowledge").  Plaintiffs have not made that showing here.

Instead, the facts set forth in Plaintiffs' own motion reflect that (i) Judge Liman was unaware of his wife's prior stockholding until approximately February 2022, and (ii) Judge Liman's wife already had sold the stock two months before oral argument on Defendants' motion and three months before Judge Liman issued his decision.  In other words, the record reflects not only that Judge Liman was unaware of the potential conflict when he decided to dismiss the case, but also that the conflict no longer existed at that time.  In response, the best argument Plaintiffs can muster is that "nothing . . . kept Judge Liman from determining that his wife held a disqualifying interest in a Defendant in this case."  (Pls.' Mem. 7.)  But that is not the test.  Plaintiff instead must show that a reasonable person, knowing all the facts, would conclude that Judge

-13-

Liman "knew of [his wife's stockholding] and yet heard the case." *Chase Manhattan Bank*, 343 F.3d at 128. Because the circumstances of this case strongly suggest otherwise, Plaintiff cannot make that showing here.

In a similar case, the Ninth Circuit recently held that a judge's prior financial interest did not give rise to a violation of Section 455(a) where the judge had divested the interest before issuing the ruling in question. *See Olean Wholesale Grocery Coop., Inc.* v. *Bumble Bee Foods LLC*, No. 19-56514 (Apr. 8, 2022), ECF No. 185. The Ninth Circuit, sitting *en banc*, concluded that, "[b]ecause [the judge] had no reportable financial interest at the time of the ruling in question, [the judge's] prior financial interests in [the entities] were not disqualifying," and therefore "no reasonable person informed of all the relevant facts would consider that she [made her ruling] on any basis other than the merits." *Id.* at 4-5. The same rationale applies here.

**B.    Even If Judge Liman Violated Section 455, Vacatur of the Judgment Is Not Warranted Under Rule 60(b)(6).**

Because Section 455 was not violated, there is no basis to vacate the judgment. Even if Judge Liman could reasonably be found to have violated Section 455, however, it still does not follow that his decision should be vacated.

Plaintiffs' memorandum implies that vacatur is *automatic* whenever a district judge violates Section 455. (*See* Pls.' Mem. 17 ("Judge Liman violated 28 U.S.C. §455(a) and 28 U.S.C. §455(b) and cannot meet the requirements of §455(f). *As a result*, Plaintiffs are entitled to vacatur of his judgment pursuant to Federal Rule of Civil Procedure 60(b)(6)." (emphasis added).) To the contrary, the Supreme Court has cautioned: "As in other areas of the law, there is surely room for harmless error committed by busy judges who inadvertently overlook a disqualifying circumstance. There need not be a draconian remedy for every violation of § 455(a)." *Liljeberg*, 486 U.S. at 862. Thus, in determining whether to vacate a judgment under Rule 60(b)(6) for failure

-14-

to recuse, courts consider three factors:  "(i) the risk of injustice to the parties in the particular case; (ii) the risk that the denial of relief will produce injustice in other cases; and (iii) the risk of undermining the public's confidence in the judicial process."  *United States* v. *Amico*, 486 F.3d 764, 777 (2d Cir. 2007).  None of these factors counsels in favor of vacating the judgment.

*First*, the pending appeal obviates any risk of injustice.  In arguing otherwise, Plaintiffs emphasize their disagreement with Judge Liman's decision granting Defendants' motion to dismiss (Pls.' Mem. 10-11), an argument that any litigant seeking to vacate a judgment could make.  The Second Circuit, however, will consider Plaintiffs' arguments and review the sufficiency of the complaint's allegations *de novo*.  Because the Second Circuit denied Plaintiffs' motion to hold their appeal in abeyance, Plaintiffs' appeal will be briefed on a schedule roughly parallel to the parties' briefing of this motion.  Accordingly, even assuming that Judge Liman violated Section 455, the Second Circuit will eliminate any "risk of injustice" through its impartial, *de novo* review.  As the Second Circuit held earlier today in a different case, "the first factor weighs heavily against vacatur" because Judge Liman "dismissed [Plaintiffs'] claims as a matter of law under Rule 12(b)(6) for failure to state a claim" and the Second Circuit will "review the question whether plaintiff has alleged a legally sufficient claim anew, without any deference to Judge Liman's assessment."  *Brock*, 2022 WL 1231044, at *4; *see also Faulkner*, 409 F.3d at 42 n.10 ("Given our disposition of the Faulkner appellants' claims, Judge Kaplan's denial of the recusal motion was at most harmless error as to them."); *Marcus*, 755 F. App'x at 52 ("[T]he judgment was appropriately entered on the merits.  Thus, there is no risk of injustice to the parties in this case if relief is denied.").[3]

_____

[3] District courts reviewing Rule 60(b)(6) motions based on recently discovered financial interests even without the benefit of a pending appeal similarly have found no risk of injustice where there were no infirmities in the judge's decision.  *See, e.g.*, *Murry* v. *Ocwen Loan Servicing, LLC*, 2022 WL 194481, at *1 (D. Colo. Jan. 21, 2022) ("I find the circumstances here do not warrant vacatur as

It is also well-established that a party's disagreement with a court's decision after full briefing and argument does not amount to an injustice to the losing party. *See*, *e.g.*, *Chesher* v. *3M Co.*, 2022 WL 88328, at *2 (D.S.C. Jan. 6, 2022) ("[W]hile Plaintiffs makes clear that they disagree with Judge Norton's order, disagreement does not constitute 'injustice' . . . ."); *Elgalad* v. *N.Y. City Dep't of Educ.*, 2019 WL 4805669, at *4 (S.D.N.Y. Sept. 30, 2019) ("Mere disagreement with this Court's interpretation and analysis of the facts pled is not an appropriate ground for reconsideration."). That is the only purported "injustice" Plaintiffs identify here. (*See* Pls.' Mem. 10.)

*Second*, there is no risk that denial of the requested relief while the Second Circuit considers Plaintiffs' appeal will produce injustice in other cases. Plaintiffs suggest that vacating Judge Liman's decision may encourage other judges to examine more carefully possible grounds for disqualification (*id.* at 12), another argument that any litigant seeking vacatur of a judgment could make. The record in this case, however, does not suggest that Judge Liman ignored warning signs of conflict and chose to proceed with the case anyway.[4] Rather, as the *Wall Street Journal* reported

---

there was no prejudicial error in the judgment or rulings against Mr. Murry."); *Roberts* v. *Wal-Mart Store Stores*, 2022 WL 141677, at *3 (W.D. La. Jan. 14, 2022) ("The Court's review of the record shows a firm basis for Judge Doherty's findings and conclusions supporting her decision that prescription barred the claims against Wal-Mart."). A review of the parties' briefs and oral argument before Judge Liman will demonstrate that Judge Liman's decision dismissing this case was correct as a matter of law.

[4] Although Plaintiffs repeatedly cite *Chase Manhattan Bank*, the facts of that case only underscore why vacatur is not warranted here. In *Chase Manhattan Bank*, after presiding over a bench trial and entering judgment in the plaintiffs' favor, the trial judge disclosed that he owned stock in Chase Manhattan Bank, which had merged with one of the plaintiffs—Chemical Bank. 343 F.3d at 124. Despite the judge's statement that he had been unaware of the Chase Manhattan Bank-Chemical Bank merger, *id.* at 130, the Second Circuit vacated the judgment because of conflicting facts in the record, including motion papers expressly noting the merger, a settlement conference before the judge at which Chase Manhattan Bank executives attended, trial testimony about the merger, and references to the merger in the judgment itself. *Id.* at 125. By contrast, the record here is devoid of any suggestion that Judge Liman knew of his wife's prior stockholding when considering Defendants' motion to dismiss.

(*see supra* n.2), Judge Liman's oversight was one of dozens of similar incidents across the federal judiciary, which has sparked Congress and the Administrative Office of the U.S. Courts to reevaluate conflict-checking policies and procedures.[5]   Vacating Judge Liman's decision—and potentially dozens of other decisions like it based on Plaintiffs' *per se* rule—would do nothing to achieve a systemic solution to the issue, but rather would only add to the federal judiciary's burdens by requiring each case, irrespective of its procedural posture, to be litigated anew.  Such a wholesale vacatur of dozens of judgments would prejudice the reliance interests of parties in cases in which rulings already have been entered and appeals have been taken.  Jettisoning the harmless error approach put in place by the Supreme Court and the Second Circuit thus would create a far greater risk of injustice than denying the instant motion and deferring to the Second Circuit's ongoing consideration of Plaintiffs' appeal.

*Third*, there is no risk of undermining the public's confidence in the judiciary—both because Judge Liman's wife had fully divested her stockholding before Judge Liman heard argument and ruled on Defendants' motion to dismiss and because the Second Circuit will review *de novo* Judge Liman's decision dismissing the case.  Plaintiffs' only argument is that "the public's confidence in an impartial judiciary is already shaken" due to "the *Wall Street Journal*'s coverage of judicial conflicts of interest" (Pls.' Mem. 12), an argument that, if accepted, would require vacatur of the judgments in all of the cases that are the subject of the *Wall Street Journal*'s reporting.  The Second Circuit's *de novo* review of Judge Liman's decision, however, will "alleviate[] any risk that the public's confidence in the judicial process will be undermined by the alleged conflict." *Marcus*, 755 F. App'x at 52.  Having this Court concurrently decide the conflict issue or reconsider Defendants' motion to dismiss would only waste judicial resources and

---

[5] *See* Courthouse Ethics and Transparency Act, H.R. 5720, 117th Cong. (passed House Dec. 1, 2021); Courthouse Ethics and Transparency Act, S. 3059, 117th Cong. (passed Senate Feb. 17, 2022).

undercut the public's interest in an efficient judiciary.  *See Patterson*, 335 F.3d at 486 ("[T]he public may be more inclined to lose faith in the system if this court were to mindlessly vacate Judge Cobb's rulings."); *Parker* v. *Connors Steel Co.*, 855 F.2d 1510, 1526 (11th Cir. 1988) ("It would . . . be ridiculous to remand this case and reassign it to another judge after we have already exercised plenary review.").  Where, as here, the Second Circuit's plenary review will render any failure to recuse "at most harmless error," there is no risk of undermining the public's confidence in the judiciary, and vacatur of the judgment should be denied.  *Faulkner*, 409 F.3d at 42 n.10; *Camacho*, 868 F.2d at 490; *Marcus*, 755 F. App'x at 52.

## III.   This Court Also Should Defer Consideration of Plaintiffs' Improper Request for an Indicative Ruling That the Court Would Grant Leave to Amend the Complaint.

Plaintiffs' request for a further indicative ruling that, *if* the Second Circuit were to remand the case, and *if* the Court were to vacate Judge Liman's dismissal, this Court then also would "grant Plaintiffs leave to amend their complaint" (Pls.' Mem. 1) likewise should be deferred or denied outright.  Plaintiffs cite no support for their request for a second indicative ruling on a motion for leave to amend their complaint under Rule 15(a)(2).  (*See id*. at 13-17.)  The request is both premature and procedurally improper, particularly after Plaintiffs already had ample opportunities to amend their complaint and have waived their right to do so further.  Even if Plaintiffs' request for leave to amend were properly before the Court, the request should be denied:  Plaintiffs already have amended their complaint twice, and their latest proposed amendments are futile.  Even a cursory review of those amendments exposes them as wholly insufficient to remedy the complaint's many defects.[6]

---

[6] If the Court does not defer consideration of Plaintiffs' request or reject the proposed amendments out of hand, Defendants respectfully submit that the Court should order full briefing on the viability of the amendments.

## A. Plaintiffs' Request for a Second Indicative Ruling Is Premature and Procedurally Improper.

With the case currently on appeal in the Second Circuit, Plaintiffs' request for a further indicative ruling on a motion for leave to amend is both premature and improper. There is no need for this Court to decide now what it would do next in the event that the judgment is vacated, including whether it would permit further amendments to Plaintiffs' already twice-amended complaint. That issue—like every other future case-management issue—should be decided only if Judge Liman's decision is, in fact, vacated and the case is remanded by the Second Circuit. In similar circumstances, courts have rejected motions for leave to amend the complaint in deference to ongoing appellate proceedings that will address the sufficiency of the complaint's allegations. *See Ret. Bd. of Policemen's Annuity & Ben. Fund*, 297 F.R.D. at 221-22 (rejecting motion for indicative ruling on leave to amend as "inappropriate" when appeal of dismissal of complaint remains pending). The Second Circuit, with the benefit of full briefing and argument from the parties, will review the sufficiency of the extant complaint's allegations and can decide whether another round of amendments would be futile.

## B. Plaintiffs Had Ample Opportunities to Amend Their Complaint.

In arguing that there has been no undue delay or bad faith, Plaintiffs gloss over the case's history. (*See* Pls.' Mem. 14-16.) Before Plaintiffs filed their operative complaint on October 29, 2020, Judge Liman permitted Plaintiffs to amend their complaint twice: once when he granted Plaintiffs' motion for appointment of interim class counsel (ECF No. 108) and again in response to Defendants' first motion to dismiss (ECF Nos. 109 & 125). Plaintiffs never requested a third chance to amend their complaint upon receiving Defendants' second motion to dismiss—not in their opposition to that motion nor at oral argument. In dismissing the case with prejudice, Judge Liman stressed that "Plaintiffs have not requested leave to amend the Complaint if the motion is

granted" and that "Plaintiffs have already amended their complaint once in response to Defendants' first motion to dismiss, . . . which raised virtually identical arguments to those considered here." (ECF No. 147 at 62 & n.4.) By failing to challenge Judge Liman's decision not to permit further amendments in their ongoing appeal to the Second Circuit, Plaintiffs have waived that issue.

Despite this history, Plaintiffs argue they should be permitted leave to amend because this case is "at a very early stage," "Defendants ha[ve] not answered the Complaint, no discovery ha[s] taken place, no case schedule ha[s] been entered, and no trial date ha[s] been set." (Pls.' Mem. 15.) But if that were the standard for leave to amend, Rule 15 would require potentially limitless amendments of the complaint in response to successive motions to dismiss. That is not the law.

At bottom, Plaintiffs' request for an indicative ruling on this issue, together with their submission of a proposed amended complaint as an exhibit to this motion, appears to be an improper attempt to smuggle a proposed amended pleading into their pending appeal. If the Court denies (rather than defers considering) Plaintiffs' requests for indicative rulings under Rule 62.1, Plaintiffs undoubtedly will attempt to appeal that ruling and have their second appeal consolidated with the pending appeal. The consolidation of the two appeals would allow Plaintiffs to put before the Second Circuit panel that reviews the dismissal of this case a proposed amended pleading—which they failed to submit before judgment was entered—in an effort to bolster their appeal of Judge Liman's decision. This Court should not countenance such maneuvering and instead should simply defer consideration of Plaintiffs' requests.

### C.  Plaintiffs' Proposed Amendments Are Futile.

Even if Plaintiffs' proposed amendments were properly before the Court, those amendments are futile. Plaintiffs' cursory discussion of the proposed amendments in their memorandum (Pls.' Mem. 16-17) is not nearly enough for this Court to conclude that those

amendments would remedy the multiple fatal flaws that Judge Liman identified in the operative complaint. Plaintiffs simply say that their amendments "address certain of [Judge Liman's] criticisms by adding additional factual allegations and a more detailed explanation of their experts' statistical analyses." (*Id.* at 16.) They then offer six one-sentence bullet points that purport to describe the "additional information and allegations" included in the amendments, without explaining how the amendments would make a substantive difference. (*Id.*) On their face, however, the proposed amendments are either cumulative of existing allegations or otherwise insufficient to remedy the complaint's many defects.

The amended allegations related to the membership of TradeWeb's board of directors— including the "identities of the senior executives Defendants installed on TradeWeb's Board" and the allegation that those executives may have communicated at "TradeWeb Board meetings" (*id.* at 16)—add nothing. Those allegations are cumulative of Plaintiffs' existing allegations about Defendants' alleged control of TradeWeb's board and Defendants' purported attempt to leverage that control to further the alleged boycott conspiracy. (ECF No. 128 ¶¶ 133, 135, 143-152, 186-189, 209.) Like Plaintiffs' prior allegations, the new allegations fail to allege that any Defendant took any concrete action to prevent TradeWeb from offering all-to-all trading on its platform or from allowing retail investors to access its platform. (ECF No. 147 at 23 ("[T]ellingly [Plaintiffs] do not allege that TradeWeb ever considered opening its platform to retail odd-lot investors whether before or after Defendants' investment.")). And Plaintiffs' general allegations about "high-level inter-firm communications" at "Board meetings" (Pls.' Mem. 16) are insufficient because Plaintiffs still "have not alleged any interfirm communications that are connected to the alleged group boycott" (ECF No. 147 at 48). At most, Plaintiffs have alleged the "mere opportunity to conspire," which "does not by itself support the inference that such an illegal

combination actually occurred." *Cap. Imaging Assocs., P.C.* v. *Mohawk Valley Med. Assocs., Inc.*, 996 F.2d 537, 545 (2d Cir. 1993).

The amended allegations related to Defendants' purported market power—including "[a]dditional information concerning Defendants' dominance of" the alleged relevant market (Pls.' Mem. 16)—are similarly futile. The existing complaint already includes such allegations. (ECF No. 128 ¶¶ 78-80, 229-230.) Although Judge Liman held that those allegations lacked "specific facts" needed to plead a highly concentrated market (ECF No. 147 at 40), he went on to conclude that, "even crediting *arguendo* Plaintiffs' assertion that they have pled that Defendants control a large market share of the secondary corporate bond market, this does not make the alleged parallel conduct suggestive of a conspiracy" (*id.* at 43).

The proposed amended complaint's "[f]urther explanation of Plaintiffs' experts' statistical analyses" (Pls.' Mem. 17) also lends no support to Plaintiffs' group-boycott claim. These "new" allegations suffer from the same flaws that doomed the prior statistical allegations. Plaintiffs continue to rely on "average[s]," rather than Defendant-specific data, which Judge Liman found insufficient. (ECF No. 147 at 37 (statistics presented "in gross" cannot "say anything meaningful about the role of any individual Defendant and thus about the group of Defendants as a whole").) Moreover, Plaintiffs' contention that Defendants "captured supracompetitive profits" (Pls.' Mem. 17) at most suggests a common motive to increase or maintain profits, not any parallel conduct suggestive of a boycott conspiracy. A "shared goal to . . . increase profits" is not even "a plus factor establishing an agreement without further evidence of concerted, collusive conduct." *LifeWatch Servs. Inc.* v. *Highmark Inc.*, 902 F.2d 323, 335 n.7 (3d Cir. 2018).

Plaintiffs' additional allegations expounding on "economic theory" (Pls.' Mem. 17) fare no better. Plaintiffs' latest assertions about the supposed lack of "economic justifications" for

pricing disparities between odd-lot and round-lot trades mirror those in the existing complaint (ECF No. 128 ¶¶ 11, 103, 232-236), and none undermines Judge Liman's conclusion that the "plausible inference to be drawn from Plaintiffs' allegations is that any price disparity between the price paid for bonds purchased in an odd lot versus the price paid for bonds purchased in a round lot is the result of natural competitive forces" (ECF No. 147 at 34).

In sum, Plaintiffs are wrong in claiming—and their memorandum does not even attempt to establish—that "[t]hese amendments, along with the rest of the Complaint, plausibly allege that Defendants committed an antitrust violation." (Pls.' Mem. 17.)

## CONCLUSION

For the foregoing reasons, the Court should defer considering Plaintiffs' requests for indicative rulings under Federal Rule of Civil Procedure 62.1 in deference to the ongoing appeal in the Second Circuit. In the alternative, the Court should deny those requests.

Dated: April 27, 2022
      New York, New York


/s/ Adam S. Hakki
Adam S. Hakki
Richard F. Schwed
SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, New York  10022
Telephone:  (212) 848-4000
Facsimile:  (212) 848-7179
adam.hakki@shearman.com
rschwed@shearman.com

*Attorneys for Defendants Bank of America Corporation; BofA Securities, Inc.; and Merrill Lynch, Pierce, Fenner & Smith Incorporated*

/s/ Barry G. Sher
Barry G. Sher
Kevin Broughel
PAUL HASTINGS LLP
200 Park Avenue
New York, New York  10166
Telephone:  (212) 318-6085
Facsimile:  (212) 230-5185
barrysher@paulhastings.com
kevinbroughel@paulhastings.com

*Attorneys for Defendant Barclays Capital Inc.*

/s/ Jay Kasner
Jay Kasner
Karen M. Lent
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
One Manhattan West
New York, New York  10001
Telephone:  (212) 735-3276
Facsimile:  (917) 777-3276
jay.kasner@skadden.com
karen.lent@skadden.com

*Attorneys for Defendants Citigroup Inc. and Citigroup Global Markets Inc.*

/s/ Herbert S. Washer
Herbert S. Washer
Sheila C. Ramesh
Adam S. Mintz
CAHILL GORDON & REINDEL LLP
32 Old Slip
New York, New York  10005
Telephone:  (212) 701-3000
hwasher@cahill.com
sramesh@cahill.com
amintz@cahill.com

*Attorneys for Defendant Credit Suisse Securities (USA) LLC*

/s/ John Terzaken

John Terzaken
Adrienne V. Baxley
SIMPSON THACHER & BARTLETT LLP
900 G Street, NW
Washington, DC  20001
Telephone:  (202) 636-5000
Facsimile:  (202) 636-5502
john.terzaken@stblaw.com
adrienne.baxley@stblaw.com

*Attorneys for Defendant Deutsche Bank
Securities Inc.*


/s/ Robert D. Wick

Robert D. Wick
John S. Playforth
COVINGTON & BURLING LLP
One City Center
850 Tenth Street, N.W.
Washington D.C.  20001
Telephone:  (202) 662-6000
Facsimile:  (202) 662-6291
rwick@cov.com
jplayforth@cov.com

*Attorneys for Defendants JPMorgan Chase &
Co. and J.P. Morgan Securities LLC*


/s/ Richard C. Pepperman II

Richard C. Pepperman II
Matthew J. Porpora
Jonathan S. Carter
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004-2498
Telephone:  (212) 558-4000
Facsimile:  (212) 558-3588
peppermanr@sullcrom.com
porporam@sullcrom.com
carterjo@sullcrom.com

*Attorneys for Defendants The Goldman Sachs
Group, Inc. and Goldman Sachs & Co. LLC*


/s/ Richard A. Rosen

Richard A. Rosen
Susanna Michele Buergel
Brad S. Karp
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON, LLP
1285 Avenue of the Americas
New York, New York  10019
Telephone:  (212) 373-3305
Facsimile:  (212) 492-0305
rrosen@paulweiss.com
sbuergel@paulweiss.com
bkarp@paulweiss.com

Jane Baek O'Brien
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON, LLP
2001 K Street, N.W.
Washington, D.C.  20006
Telephone:  (202) 223-7300
Facsimile:  (202) 223-7420
jobrien@paulweiss.com

*Attorneys for Defendants Morgan Stanley;
Morgan Stanley & Co., LLC; and Morgan
Stanley Smith Barney LLC*

/s/ Paul S. Mishkin
Paul S. Mishkin
Adam G. Mehes
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York  10017
Telephone:  (212) 450-4292
paul.mishkin@davispolk.com
adam.mehes@davispolk.com

*Attorneys for Defendant NatWest Markets
Securities Inc.*

/s/ Jayant W. Tambe
Jayant W. Tambe
Laura W. Sawyer
JONES DAY
250 Vesey Avenue
New York, New York  10281
Telephone:  (212) 326-3604
jtambe@jonesday.com
lwsawyer@jonesday.com

*Attorneys for Defendants Wells Fargo & Co.;
Wells Fargo Securities LLC; and Wells Fargo
Clearing Services LLC*