# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ISABEL LITOVICH, MICHAEL V. COTTRELL, FRANK HIRSCH, HOLDCRAFT MARITAL TRUST, and UNITED FOOD AND COMMERCIAL WORKERS UNION AND PARTICIPATING FOOD INDUSTRY EMPLOYERS TRI-STATE PENSION FUND, on Behalf of Themselves and All Others Similarly Situated,<br><br>    Plaintiffs,<br><br>  v.<br><br>BANK OF AMERICA CORPORATION; MERRILL LYNCH, PIERCE, FENNER & SMITH, INC.; BofA SECURITIES, INC.; BARCLAYS CAPITAL INC.; CITIGROUP INC.; CITIGROUP GLOBAL MARKETS INC.; CREDIT SUISSE SECURITIES (USA) LLC; DEUTSCHE BANK SECURITIES INC.; THE GOLDMAN SACHS GROUP, INC.; GOLDMAN, SACHS & CO., LLC; JPMORGAN CHASE & CO.; J.P. MORGAN SECURITIES LLC; MORGAN STANLEY; MORGAN STANLEY & CO., LLC; MORGAN STANLEY SMITH BARNEY LLC; NATWEST MARKETS SECURITIES INC.; WELLS FARGO & CO.; WELLS FARGO SECURITIES LLC; and WELLS FARGO CLEARING SERVICES, LLC,<br><br>    Defendants. | Case No. 20-cv-03154<br><br>Hon. Valerie E. Caproni |

## REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR AN INDICATIVE RULING UNDER RULE 62.1

## <u>TABLE OF CONTENTS</u>

I.      JUDGE LIMAN'S RECUSAL WAS MANDATORY UNDER §455(b)(4)
        AND §455(a), AND JUDGE LIMAN'S FAILURE TO RECUSE WARRANTS
        VACATUR ........................................................................................................... 1

II.     PLAINTIFFS' APPEAL DOES NOT OBVIATE THE NEED FOR THIS COURT
        TO CONSIDER PLAINTIFFS' RULE 62.1 MOTION ...................................... 6

III.    PLAINTIFFS' REQUEST FOR LEAVE TO AMEND THE PLEADING IS NOT
        FUTILE.................................................................................................................. 8

IV.     CONCLUSION...................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alaska Elec. Pension Fund v. Bank of Am. Corp.*,
  2017 WL 466468 (S.D.N.Y. Feb 1, 2017)........................................................................9, 10

*Anderson News, L.L.C. v. Am. Media, Inc.*,
  680 F.3d 162 (2d Cir. 2012)..........................................................................................9

*Chase Manhattan Bank v. Affiliated FM Ins. Co.*,
  343 F.3d 120 (2d Cir. 2003).........................................................................................1

*Gelboim v. Bank of Am. Corp.*,
  823 F.3d 759 (2016)......................................................................................................9

*In re Murchison*,
  349 U.S. 133 (1955).......................................................................................................5

*In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*,
  865 F. Supp. 2d 1002 (C.D. Cal. 2011) .......................................................................9

*Lee v. Kylin Mgmt. LLC*,
  2019 WL 917097 (S.D.N.Y. Feb. 25, 2019) ................................................................8

*Liljeberg v. Health Servs. Acquisition Corp.*,
  486 U.S. 847 (1988)............................................................................................. *passim*

*New York SMSA Ltd. P'ship v. Town of Hempstead*,
  2013 WL 1148898 (E.D.N.Y. Mar. 19, 2013) .............................................................8

*Ret. Bd. of Policemen's Annuity & Ben. Fund of Chicago v. Bank of N.Y. Mellon*,
  297 F.R.D. 218 (S.D.N.Y. 2013) .................................................................................6

*Rosenzweig v. Ro Gallery Image Makers, Inc.*,
  2020 WL 1957413 (E.D.N.Y. Apr. 23, 2020) .............................................................8

*U.S. v. Amico*,
  486 F.3d 764 (2d Cir. 2007).........................................................................................7

**Statutes, Rules, and Regulations**

5 U.S.C.
  §101(d)......................................................................................................................4, 5

28 U.S.C.
    §455................................................................................................................................ *passim*
    §455(a)........................................................................................................................... *passim*
    §455(b)........................................................................................................................................10

Federal Rules of Civil Procedure
    Rule 12(b)(6)...............................................................................................................................9
    Rule 15(a)..................................................................................................................................10
    Rule 15(a)(2)...............................................................................................................................8
    Rule 60(b) ............................................................................................................................7, 10
    Rule 62.1................................................................................................................................ *passim*

Defendants' Opposition (ECF No. 168) advances three primary arguments: (1) that Judge Liman's recusal was not required under 28 U.S.C. §455, and his failure to recuse does not warrant vacatur; (2) that this court should defer considering Plaintiffs' request because the Second Circuit's *de novo* review of the judgment "will moot any appearance of partiality and will render Judge Liman's failure to recuse himself at most harmless error"; (*id.* at 7) and (3) Plaintiffs' request for an indicative ruling that the Court would grant leave to amend the complaint should be rejected on the ground that any such amendment would be futile.  Defendants' arguments are contrary to §455 and Rule 62.1, distort the factual record by making unsupported assumptions about Judge Liman's knowledge of the facts requiring recusal, and disregard how granting Plaintiffs leave to file their proposed amended complaint – when Judge Liman's dismissal of Plaintiffs' complaint with prejudice was discretionary, and this exercise of discretion occurred where the presumption of impartiality has been called into question – is an appropriate remedy under Rule 62.1 and §455 that would not be futile.

## I. JUDGE LIMAN'S RECUSAL WAS MANDATORY UNDER §455(b)(4) AND §455(a), AND JUDGE LIMAN'S FAILURE TO RECUSE WARRANTS VACATUR

Judge Liman's recusal was mandatory under both §455(b)(4) (requiring recusal where a judge "knows that he, individually or as a fiduciary, or his spouse . . . has a financial interest in the subject matter in controversy or in a party to the proceeding") and under §455(a) (providing that a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned").  Defendants do not dispute that §455(b)(4) requires recusal if a judge knows or learns of a spouse's disqualifying financial interest in a party to a case.  Nor do Defendants dispute that §455(a) requires recusal where (i) "a reasonable person, knowing all the facts, would conclude that the judge had a disqualifying interest in a party under Section 455(b)(4)," and (ii) "such a person would also conclude that the judge knew of that interest and yet heard the case."  *Chase Manhattan*

1

*Bank v. Affiliated FM Ins. Co.*, 343 F.3d 120, 128 (2d Cir. 2003); *accord Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 860-61 (1988) (test is whether a reasonable person, "knowing all the circumstances, would expect that the judge would have actual knowledge"). As the Clerk of this Court unequivocally stated, Judge Liman's wife's holdings "would have required recusal under the Code of Conduct for United States Judges." (ECF No. 155 at 2.)

Instead, Defendants erroneously argue those criteria are not met, based on a set of facts that are entirely assumed – that Judge Liman learned of his wife's stock ownership only after *The Wall Street Journal* brought it to his attention. Specifically, Defendants argue that "nothing in the record suggests a basis to conclude that Judge Liman knew of the stockholding before dismissing the case. . . . The only logical inference from this sequence of events is that Judge Liman first became aware of his wife's earlier stockholding in February 2022 when the *Wall Street Journal* brought it to his attention." (ECF No. 168 at 12.) But nothing in §455, Rule 62.1, or any of the relevant case law supports making assumptions of this nature.

"Scienter is not an element of a violation of §455(a). The judge's lack of knowledge of a disqualifying circumstance may bear on the question of remedy, but it does not eliminate the risk that 'his impartiality might reasonably be questioned' by other persons." *Liljeberg*, 486 U.S. at 859.[1] And under §455(c), a judge is required to "make a reasonable effort to inform himself about the personal financial interests of his spouse." There were multiple times during the pendency of this case when Judge Liman reasonably should have learned of his wife's disqualifying holdings in Defendant Bank of America and immediately recused himself under §455(b)(4), and his failure to do so would lead a reasonable person to question his impartiality under §455(a).

---

[1]    Unless otherwise noted, citations are omitted and emphasis is added.

*First*, Judge Liman's May 16, 2018 financial disclosure report as a nominee to the federal bench disclosed his wife's holdings in Bank of America (which are presumably the same ones that triggered the Clerk's notice) (ECF No. 161 at 3).  He also disclosed investments valued at over a ***hundred thousand dollars*** in other Defendants, including JPMorgan, Goldman Sachs, and Morgan Stanley.  A reasonable person would expect that Judge Liman would have either: (a) ensured ***all*** of those holdings were divested before taking the bench in the Southern District of New York (a court that regularly hears cases involving major public financial institutions); or (b) immediately recused himself as required under §455(b)(4) from this case involving Bank of America when it was assigned to him on April 23, 2020.

*Second*, as Defendants acknowledge (ECF No. 168 at 4, 12), Judge Liman provided a curt disclosure at an initial conference on July 10, 2020, that he used to represent certain of the Defendants in private practice.  While Defendants suggest this somehow absolves Judge Liman and proves that he was unaware of his wife's ownership of Bank of America stock, it only underscores his failure to properly track his and his wife's disqualifying financial interests as required under §455(c).  At that initial conference, Judge Liman did not reveal his recent or current holdings in Defendants, including that his wife ***continued*** to own Bank of America stock.

Based on his holdings, Judge Liman should have realized that he had a mandatory obligation to recuse under §455(b)(4) due to his wife's holdings in Bank of America, and that, at minimum, the criteria of §455(a) had been met such that a reasonable person would question his impartiality in this case.  Judge Liman's partial disclosure at the July 10, 2020 initial conference gave Plaintiffs a false reason to believe that he had (as a reasonable observer would expect) looked into and identified all the factors that could point towards recusal.

*Third*, as a sitting district court judge, Judge Liman was required pursuant to 5 U.S.C. §101(d) to file a financial disclosure covering his and his wife's 2020 financial holdings by May 15, 2021.  A reasonable person would expect that Judge Liman would have learned of his wife's disqualifying holdings in Defendant Bank of America at that time and immediately recused himself as required under §455(b)(4).

*Fourth*, other cases demonstrate that Judge Liman was monitoring his wife's financial holdings.  In *Fishon v. Peloton Interactive Inc.*, No. 19-cv-11711, Judge Liman notified the parties on October 15, 2020 that "my wife holds shares in Peloton," that "she intends to divest herself of the shares," and thus "under Canon 3C(4) of the Code of Conduct for United States Judges, recusal is not required in this situation if divestment is made and it would not be in the public interest for me to recuse myself."  On November 2, 2020, he disclosed that the shares had been divested.  If Judge Liman was monitoring his wife's financial holdings in October 2020 sufficiently to divest and disclose in *Fishon*, a reasonable person would question why Judge Liman failed to notice his wife's disqualifying holdings in Bank of America.

Based on all of these facts, a reasonable person would not assume, as Defendants suggest, that Judge Liman was unaware of his wife's disqualifying financial holdings simply because he took no action until the issue was about to become public.  In fact, the record is devoid of any evidence, such as a statement from Judge Liman, showing (as Defendants suggest) that Judge Liman inadvertently overlooked his wife's disqualifying holdings in Bank of America until the *Wall Street Journal* reached out for comment in February 2022.  And even if there was evidence that Judge Liman lacked actual knowledge of his wife's stock ownership, that is not grounds to deny vacatur – "[t]here need not be a draconian remedy for every violation of §455(a)," but it "would be equally wrong . . . to adopt an absolute prohibition against any relief in cases involving

forgetful judges." *Liljeberg*, 486 U.S. at 862; *id.* at 867-68 (holding that even if judge "did not know of his fiduciary interest in the litigation," the "failure to stay informed of this fiduciary interest may well constitute a separate violation of §455" and it was thus "appropriate to vacate the judgment unless it can be said that respondent did not make a timely request for relief, or that it would otherwise be unfair to deprive the prevailing party of its judgment").

A reasonable person would instead believe that Judge Liman, by divesting himself of bank holdings prior to taking the bench, doing what he was required to do under §455 and 5 U.S.C. §101(d), or in investigating and preparing his disclosure to the parties for the July 10, 2020 initial pretrial conference, would have and should have learned of his wife's disqualifying holdings in Bank of America long before February 2022. Appearances matter, especially in light of the widespread failure of federal judges in various districts to disclose disqualifying financial ties as reported by the *Wall Street Journal*.[2] *In re Murchison*, 349 U.S. 133, 136 (1955) ("[T]o perform its high function in the best way 'justice must satisfy the appearance of justice.'"). The appearance of justice here demands a consideration of the full context of Judge Liman's failure to divest or disclose his wife's holdings in Bank of America stock before presiding over this case and makes vacatur the appropriate remedy here. "[T]he very purpose of §455(a) is to promote confidence in the judiciary by avoiding even the appearance of impropriety whenever possible . . . . . providing [vacatur] relief in cases such as this will not produce injustice in other cases; to the contrary, the . . . willingness to enforce §455 may prevent a substantive injustice in some future case by

---

[2]     *See* James Grimaldi, Joe Palazzolo, and Coulter Jones, Fallout from Judges' Financial Conflicts Spreads to Appeal Courts, *Wall Street Journal* (March 1, 2022), https://www.wsj.com/articles/fallout-from-judges-financial-conflicts-spreads-to-appeals-courts-11646155384.

encouraging a judge or litigant to more carefully examine possible grounds for disqualification and to promptly disclose them when discovered."  *Liljeberg*, 486 U.S. at 865, 868.

## II.     PLAINTIFFS' APPEAL DOES NOT OBVIATE THE NEED FOR THIS COURT TO CONSIDER PLAINTIFFS' RULE 62.1 MOTION

Defendants' alternative argument – that this Court should defer a decision on Plaintiffs' motion because the Second Circuit will engage in a *de novo* review of Judge Liman's judgment that "will render his failure to recuse himself at most harmless error" and that it will be a "'waste of judicial resources'" for this Court to consider Plaintiffs' Rule 62.1 motion (ECF No. 168 at 9) – also fails.

*First*, Defendants' suggestion that it is a "waste of judicial resources" for this Court to consider Plaintiffs' motion – a motion expressly anticipated under the Federal Rules – is contrary to the Rule's purpose.  The whole point of a Rule 62.1 motion is to permit a district court to weigh in after it has otherwise lost its jurisdiction over the matter because of a pending appeal.  A Rule 62.1 motion does not waste resources because effort expended by this Court equates to effort saved by the Second Circuit.  Defendants themselves recognize this, by citing *Ret. Bd. of Policemen's Annuity & Ben. Fund of Chicago v. Bank of N.Y. Mellon*, 297 F.R.D. 218, 221 (S.D.N.Y. 2013) for the proposition that Rule 62.1 "allow[s] for the timely resolution of motions which may further the appeal *or obviate its necessity*."  (ECF No. 168 at 7.)

*Second*, Defendants' suggestion that a judge's violation of §455 becomes harmless error after an appellate court's *de novo* review of that judgment ignores the purpose of §455: "to promote confidence in the judiciary by avoiding even the appearance of impropriety whenever possible." *Liljeberg*, 486 U.S. at 865.  *De novo* review of Judge Liman's opinion, without addressing the §455 violation, will do nothing to cure the appearance of impropriety and loss of confidence in the judiciary's impartiality.  Defendants' position, carried to its logical conclusion, would suggest

there is no remedy for even the most blatant §455 violation whenever the district court's judgment is subject to *de novo* review – which would include not only motions to dismiss but even summary judgment rulings.  Such a rule would undermine, not contribute to, confidence in the courts.  *See Liljeberg*, 486 U.S. at 862 (though there is "room for harmless error," it would be "wrong . . . to adopt an absolute prohibition against any relief in cases involving forgetful judges"); *U.S. v. Amico*, 486 F.3d 764, 777 (2d Cir. 2007) (explaining that the *Liljeberg* inquiry is "not a traditional harmless-error analysis").

*Third*, to the extent Defendants argue that Plaintiffs' preservation of their §455 arguments before the Second Circuit should lead this Court to defer or avoid consideration of them, they are wrong.  Plaintiffs included such arguments in their appellate briefing to avoid any contention of waiver and as alternative grounds for relief: "***Plaintiffs believe the district court should apply those [Amico] factors in the first instance***; have sought an indicative ruling under Federal Rules of Civil Procedure 60(b) and 62.1; and reserve the right to appeal any resolution of that ruling. ***Alternatively***, the district court's violation of §455 warrants vacatur by this Court."  (Case 21-2905, ECF No. 100 at 61.)  And, as stated above, Rule 62.1 expressly contemplates the district court's consideration of a motion while an appeal is pending.

*Finally*, this Court is better suited to consider a motion concerning Judge Liman's violation of §455 and the appropriate remedy for that violation in the first instance.  Although the undisputed facts already set forth in the record call for vacatur, Defendants' argument that the Court should make "logical inference[s]" in their favor can only be interpreted as a request for fact-finding, and this Court, rather than an appellate court, is the appropriate forum for finding facts.  As the Supreme Court's recitation of the case history in *Liljeberg* noted, when a lower appellate court in the case "determined that resolution of the motion [to vacate on the ground that the district court

judge was disqualified under §455(a) at the time he heard the action and entered judgment] required factual findings concerning the extent and timing" of the judge's disqualifying interest in the litigation, "the panel reversed *and remanded the matter to a different judge for such findings*." 486 U.S. at 851.

## III.   PLAINTIFFS' REQUEST FOR LEAVE TO AMEND THE PLEADING IS NOT FUTILE

Rule 15(a)(2) instructs courts to "freely give leave [to amend a pleading] when justice so requires."  Leave to amend should be denied only where there is '"undue delay, bad faith, futility of the amendment [or] . . . prejudice to the opposing party.'"  *Lee v. Kylin Mgmt. LLC*, 2019 WL 917097, at \*1 (S.D.N.Y. Feb. 25, 2019).  The burden to establish these factors is on the party opposing the amendment.  *See New York SMSA Ltd. P'ship v. Town of Hempstead*, 2013 WL 1148898, at \*5 (E.D.N.Y. Mar. 19, 2013).

Plaintiffs' operative complaint already states a claim and is sufficient survive a motion to dismiss.  However, Plaintiffs propose amendments to address certain of the Court's criticisms by adding additional factual allegations and providing a more detailed explanation of their experts' statistical analyses.  In response, Defendants could not and did not argue undue delay, bad faith, or undue prejudice.  Instead, Defendants argue Plaintiffs' request for amending their pleading is "procedurally improper" and "futile."  Defendants' arguments fall short.

*First*, Defendants' procedural argument that the Court should defer consideration of Plaintiffs' request fails for the same reasons already given.  *See supra* §II.  If this Court concludes (as it should) that the amended complaint would state a claim, that would serve judicial economy the way Rule 61.2 contemplates, by allowing the Second Circuit to avoid the necessity to consider the first appeal.  With a fresh look at the issue, it is well within this Court's discretion to enter an indicative ruling granting Plaintiffs leave to amend.  *See Rosenzweig v. Ro Gallery Image Makers,*

*Inc.,* 2020 WL 1957413, at *1 (E.D.N.Y. Apr. 23, 2020) ("The decision on whether to grant a motion to amend rests within the sound discretion of the district court.").

 *Second*, Plaintiffs' amendment is not futile.  An amendment is not futile if it, viewed as a whole, could withstand a Rule 12(b)(6) motion to dismiss.  *See Anderson News, L.L.C. v. Am. Media, Inc*., 680 F.3d 162, 185 (2d Cir. 2012).  Leave should be granted where the amendment is neither "clearly frivolous [n]or legally insufficient on [its] face."  *Alaska Elec. Pension Fund v. Bank of Am. Corp*., 2017 WL 466468, at *1 (S.D.N.Y. Feb 1, 2017).  Together with well-pleaded facts of parallel conduct of group boycotting, Plaintiffs' proposed new allegations demonstrate the existence of multiple plus factors that tend to exclude the possibility that Defendants acted independently.  Plaintiffs' new allegations explain that each Defendant enjoyed supracompetitive profits from charging artificially wider spreads in odd-lot trades, demonstrating a common motive to conspire.  *See Gelboim v. Bank of Am. Corp.*, 823 F.3d 759, 781-82 (2016) (accepting "increased profits and the projection of financial soundness" as a plausible "common motive to conspire").  Plaintiffs cite to additional academic studies proving the continued non-competitive and economically irrational pricing structure of odd lots in comparison to round lots.  Allegations identifying membership of Tradeweb Board of Directors and their communications to collude under the cover of TradeWeb board meetings '"demonstrate[ ] how and when Defendants had opportunities to exchange information or make agreements"' and, combined with other allegations, those new allegations are more than simple '"opportunities to conspire."'  *In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*, 865 F. Supp. 2d 1002, 1026 (C.D. Cal. 2011).  Plaintiffs also add new allegations about Defendants' collective control in the secondary market of corporate bonds (the Relevant Market) and clarify that class members do not have market power in the Relevant Market.  Taken as a whole and drawing all reasonable inferences in Plaintiffs' favor,

allegations in Plaintiffs' proposed amended complaint state a plausible claim under the Sherman Act.

*Finally*, Defendants' futility arguments rely heavily on Judge Liman's decision. Had Judge Liman timely disclosed his conflict and applied §455, that opinion never would have issued. It would not serve the interests of justice or cure the appearance of impropriety for this Court to reject Plaintiffs' amended allegations without a truly independent look. Viewed without inappropriate deference to Judge Liman's earlier ruling, Defendants' futility arguments, at most, concern the merits of Plaintiffs' claim, "rendering them inappropriate for resolution on a motion for leave to amend." *Alaska Elec. Pension Fund*, 2017 WL 466468, at *1. The Court should indicate that it would vacate the judgment, permit the amendment, and consider Plaintiffs' allegations afresh on full briefing.

## IV.     CONCLUSION

Judge Liman violated 28 U.S.C. §455(a) and 28 U.S.C. §455(b). This Court should therefore grant Plaintiffs' motion under Federal Rule of Civil Procedure 62.1 and issue a ruling indicating that if the Court of Appeals remands this case, this Court would: (1) grant Plaintiffs' Rule 60(b) motion to vacate Judge Liman's dismissal of this case; and (2) grant Plaintiffs' Rule 15(a) motion for leave to file an amended complaint.

Dated: May 11, 2022                          Respectfully submitted,

                                             SCOTT+SCOTT ATTORNEYS AT LAW LLP


                                              *s/* Christopher M. Burke
                                             Christopher M. Burke (CB-3648)
                                             The Helmsley Building
                                             230 Park Ave., 17th Floor
                                             New York, NY 10169
                                             Telephone: (212) 223-6444
                                             cburke@scott-scott.com

Walter W. Noss (WN-0529)
Kate Lv (*pro hac vice*)
SCOTT+SCOTT ATTORNEYS AT LAW LLP
600 W. Broadway, Suite 3300
San Diego, CA 92101
Telephone: (619) 233-4565
wnoss@scott-scott.com
klv@scott-scott.com

George A. Zelcs (*pro hac vice*)
Randall P. Ewing, Jr. (*pro hac vice*)
Chad E. Bell (*pro hac vice*)
Ryan Z. Cortazar (*pro hac vice*)
KOREIN TILLERY LLC
205 North Michigan Avenue, Suite 1950
Chicago, IL 60601
Telephone: (312) 641-9750
gzelcs@koreintillery.com
rewing@koreintillery.com
cbell@koreintillery.com
rcortazar@koreintillery.com

Stephen M. Tillery
Steven M. Berezney (SB-1978)
Michael E. Klenov
Carol L. O'Keefe
KOREIN TILLERY LLC
505 North 7th Street, Suite 3600
St. Louis, MO 63101
Telephone: (314) 241-4844
stillery@koreintillery.com
sberezney@koreintillery.com
mklenov@koreintillery.com
cokeef@koreintillery.com

Michael E. Criden
Kevin B. Love (*pro hac vice*)
Lindsey C. Grossman
CRIDEN & LOVE, P.A.
7301 SW 57th Court, Suite 515
South Miami, FL 33143
Telephone: (305) 357-9000
mcriden@cridenlove.com
klove@cridenlove.com
lgrossman@cridenlove.com

11

Jeffrey Erez
EREZ LAW, PLLC
SunTrust International Center
1 SE 3rd Avenue, Suite 1670
Miami, FL 33131
Telephone: (305) 728-3320
jerez@erezlaw.com

Eliezer Aldarondo
ALDARONDO & LOPEZ-BRAS
ALB Plaza, Suite 400
16 Las Cumbres Ave. (Road 199)
Guaynabo, PR 00969
Telephone: (787) 474-5447
eliezer.aldarondo@gmail.com

*Attorneys for Plaintiff Isabel Litovich*

Michael E. Criden
Kevin B. Love
Lindsey C. Grossman
CRIDEN & LOVE, P.A.
7301 SW 57th Court, Suite 515
South Miami, FL 33143
Telephone: (305) 357-9000
mcriden@cridenlove.com
klove@cridenlove.com
lgrossman@cridenlove.com

*Attorneys for Plaintiff Holdcraft Marital Trust*

Joshua H. Grabar (*pro hac vice*)
GRABAR LAW OFFICE
1650 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone: (267) 507-6085
jgrabar@grabarlaw.com

Seth D. Rigrodsky
Timothy J. MacFall
RIGRODSKY & LONG, PA
825 East Gate Boulevard, Suite 300
Garden City, NY 11530
Telephone: (516) 683-3516
sdr@rl-legal.com
tjm@rl-legal.com

Marc H. Edelson
EDELSON LECHTZIN LLP
3 Terry Drive, Suite 205
Newtown, PA 18940
Telephone: (215) 867-2399
medelson@edelson-law.com

*Attorneys for Plaintiff Michael V. Cottrell*

Michael J. Freed
Douglas A. Millen
Robert J. Wozniak
FREED KANNER LONDON & MILLEN LLC
2201 Waukegan Rd, Suite 130
Bannockburn, IL 60015
Telephone: (224) 632-4500
mfreed@fklmlaw.com
dmillen@fklmlaw.com
rwozniak@fklmlaw.com

R. Alexander Saveri
Cadio Zirpoli
SAVERI & SAVERI, INC.
706 Sansome Street
San Francisco, CA 94111
Telephone: (415) 217-6810
rick@saveri.com
cadio@saveri.com

*Attorneys for Plaintiff Frank Hirsch*

John Radice
Kenneth Pickle
Daniel Rubenstein
RADICE LAW FIRM, PC
475 Wall Street
Princeton, NJ 08540
Telephone: (646) 245-8502
jradice@radicelawfirm.com
kpickle@radicelawfirm.com
drubenstein@radicelawfirm.com

13

Glen E. Summers
Karma M. Giulianelli
BARTLIT BECK LLP
1801 Wewatta Street, Suite 1200
Denver, CO 80202
Telephone: (303) 592-3100
glen.summers@bartlitbeck.com
karma.giulianelli@bartlitbeck.com

James C. Shah
Eric L. Young
SHEPHERD, FINKELMAN, MILLER
  & SHAH, LLP
1845 Walnut Street, Suite 806
Philadelphia, PA 19103
Telephone: (610) 891-9880
jshah@sfmslaw.com
eyoung@sfmslaw.com

James E. Miller
Laurie Rubinow
SHEPHERD, FINKELMAN, MILLER
  & SHAH, LLP
65 Main Street
Chester, CT 06412
Telephone: (860) 526-1100
jmiller@sfmslaw.com
lrubinow@sfmslaw.com

*Attorneys for Plaintiff United Food and
Commercial Workers Union and Participating
Food Industry Employers Tri-State Pension Fund*

## CERTIFICATE OF SERVICE

I hereby certify that on May 11, 2022, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.

 *s/* Christopher M. Burke

Christopher M. Burke
